**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STATE OF MISSOURI ex rel.** | ) | |
| **Attorney General CHRIS KOSTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| **vs.** | ) | |
| | ) | |
| **CHARTER COMMUNICATIONS, INC.** | ) | **JURY TRIAL DEMANDED** |
| **d/b/a CHARTER COMMUNICATIONS** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR CIVIL PENALTIES, PERMANENT**
**INJUNCTIONS, AND OTHER EQUITABLE RELIEF**

Plaintiff, the State of Missouri, at the relation of Missouri Attorney

General Chris Koster ("Plaintiff"), for its Complaint for Civil Penalties,

Permanent Injunctions, and Other Equitable Relief (the "Complaint"), upon

information and belief, alleges against Defendant Charter Communications,

Inc., doing business as Charter Communications, as follows:

**INTRODUCTION**

1.     The State of Missouri, at the relation of Missouri Attorney

General Chris Koster, the chief legal officer of the State of Missouri, brings

this Complaint pursuant to the Telephone Consumer Protection Act, 47

U.S.C. § 227 (inclusive of its rules found at 47 C.F.R. § 64.1200 *et seq.*) (the

"TCPA"), the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"), the

Missouri No-Call Law, Mo. Rev. Stat. §§ 407.1090, RSMo., *et seq*., and the

Missouri Telemarketing Practices Law, Mo. Rev. Stat. §§ 407.1070, RSMo., *et*

*seq*., against Defendant Charter Communications, Inc., for civil penalties,

permanent injunctions, and other equitable relief.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331 and 1337(a), the TCPA, and the TSR. This

Court has supplemental jurisdiction over Plaintiff's state-law claims

pursuant to 28 U.S.C. § 1367.

3.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), which

provides that a civil action may be brought in any "judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred,

or a substantial part of property that is the subject of the action is situated."

4.    A substantial portion of the events giving rise to the claims

alleged herein occurred within the Eastern District of Missouri.

5.    Divisional venue is proper under E.D. Mo. L.R. 3-2.07(B) because

many of the events alleged herein occurred in St. Louis, Missouri, and

because Defendant keeps and maintains places of business in St. Louis

County, Missouri.

# PARTIES

## *Plaintiff*

6.     Chris Koster is the duly elected, qualified, and acting Attorney General of the State of Missouri, and brings this action in his official capacity pursuant to Chapter 407 of the Missouri Revised Statutes (commonly referred to as the "Missouri Merchandising Practices Act").

7.     Attorney General Koster also brings this action on behalf of the State of Missouri, as *parens patriae*, pursuant to authority found in the Telemarketing Act, 15 U.S.C. § 6103(a), and 16 C.F.R. § 310.7(a).

## *Defendant*

8.     Defendant Charter Communications, Inc., doing business as Charter Communications (hereinafter "Charter"), is an active Delaware-corporation with offices located at 12405 Powerscourt Drive, St. Louis, MO 63131. Charter is a publically traded company, with I.R.S. Employer Identification Number 43-1857213. Charter, through its subsidiaries, including Charter Communications Holdings, LLC, and Charter Communications Operating, LLC (the "Charter Family of Companies") offer cable, internet, and telephone services to consumers throughout the United States, including in the State of Missouri.

9.     Charter is registered with the Missouri Secretary of State as an active foreign for-profit business; charter number F00475971, whose

3

registered agent is CSC-Lawyers Incorporating Service Company, 221

Bolivar Street, Jefferson City, MO 65101.

10.    Charter does business in the State of Missouri and is thus within

the jurisdiction of this Court.

## COMMERCE

11.    At all times material to this Complaint, Charter has maintained

a substantial course of trade in or affecting commerce, as that time is defined

in 15 U.S.C. § 44.

## THE TELEMARKETING SALES RULE

12.    Congress directed the Federal Trade Commission ("FTC") to

prescribe rules prohibiting abusive and deceptive telemarketing acts or

practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The

FTC adopted the original TSR in 1995, extensively amended it in 2003, and

amended certain provisions thereafter.  16 C.F.R. Part 310.

13.    Among other things, the 2003 amendments to the TSR

established a do-not-call registry maintained by the FTC of consumers who

do not wish to receive certain types of telemarketing calls.  Consumers can

register their telephone numbers on the do-not-call registry without charge

through a toll-free telephone call or over the internet.

14.     Pursuant to the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services.  16 C.F.R. § 310.2(v).

15.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the national do-not-call registry in violation of the TSR. 16 C.F.R. § 310.4(b)(1)(iii)(B).

16.     The TSR also prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

17.     The TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller.  16 C.F.R. 310.4(b)(1)(v)(A).

18.     A violation of the TSR constitutes an "unfair or deceptive act or practice" in or affecting commerce.  15 U.S.C. §§ 45(a), 57a(d)(3), 6102(c).

## THE TELEPHONE CONSUMER PROTECTION ACT

19.     The TCPA was designed to prevent the telephone calls like the ones described within this Complaint, and to protect the privacy of citizens like the Missouri consumers described herein. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes –prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

20.     The TPCA prohibits, *inter alia¸* telemarketing calls to cellular phones as well as calls made using an automatic dialer system:

> It shall be unlawful for any person within the United States…—
>
> (A)     to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— …
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes…

47 U.S.C. § 227(b)(1)

21.     47 U.S.C. 227(b)(3) creates a right of action for a person or entity to seek both injunctive relief and statutory damages in the amount of $500.00 for each violation of the TCPA.

22.     47 U.S.C. 227(b)(3)(C) allows the Court, upon a finding that a defendant willfully and/or knowingly violated the TCPA, to award treble damages for each violation of the TCPA.

23.     Under the TCPA, as interpreted by the Federal Communications Commission ("FCC"), a company on whose behalf a telephone solicitation is made bears ultimate responsibility for any violations of the TCPA. *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6590 (2013).

24.     Calls placed by a third party on behalf of that company are treated as if the company itself placed the call. *Id*.

25.     The phone calls at issue in this case were made by and/or for the benefit of Defendant. Because these calls were made by or "on behalf" of Defendant, Defendant bears the responsibility for any violations of the TCPA, even if Defendant did not directly place the calls. Defendant is also responsible for the illegal actions of its agents and is also responsible for any illegal actions conducted in the course of any joint venture with any third party.

26.     Moreover, whenever this Complaint refers to any act or acts of Defendant, the reference shall also be deemed to mean the directors, officers,

7

employees, affiliates, or agents of the Defendant who authorized such act or acts while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and by persons who are parents or alter egos of Defendant while acting within the scope of their agency, affiliation or employment, jointly or severally.

27.     All acts attributed to Defendant in this Complaint shall also be deemed to refer to acts by any agent, associate, affiliate, subsidiary or joint venturer of Defendant or any act taken by any person, as defined in 47 U.S.C. § 153, on behalf of or for the benefit of Defendant.

28.     Violations of the TCPA result in liability, even if the violations were the result of negligence.

## THE MISSOURI NO-CALL LAW

29.     Mo. Rev. Stat. § 407.1098.1 provides:

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of such subscriber's objection to receiving telephone solicitations.

30.     Mo. Rev. Stat. § 407.1107.1 provides:

> The attorney general may initiate proceedings relating to a knowing or threatened knowing violation of section 407.1098 or 407.1104.  Such proceedings may include, without limitation, an injunction, a civil penalty up to a maximum of five

thousand dollars for each knowing violation and additional relief in any court of competent jurisdiction. The attorney general may issue investigative demands, issue subpoenas, administer oaths and conduct hearings in the course of investigating a violation of section 407.1098 or 407.1104.

31. A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

32. A "telephone solicitation" is defined as "any voice communication over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services…" Mo. Rev. Stat. § 407.1095(3).

## THE MISSOURI TELEMARKETING LAW

33. Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3) Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4) Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to

9

others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

34.    "Seller" is defined as, "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide merchandise to the consumer in exchange for consideration."  Mo. Rev. Stat. § 407.1070(11).

35.    "Telemarketer" is defined as, "any person, or any recorded, computer-generated, electronically generated or other voice communication of any kind, who, in connection with telemarketing, initiates or receives telephone calls to or from a consumer. A telemarketer includes, but is not limited to, any such person that is an owner, operator, officer, director or partner to the management activities of a business."  Mo. Rev. Stat. § 407.1070(12).

36.    "Telemarketing" is defined as, "a plan, program or campaign which is conducted to induce the purchase or lease of merchandise by use of one or more telephones and which involves more than one telephone call." Mo. Rev. Stat. §407.1070(13).

## FACTUAL ALLEGATIONS

37.    Charter and the Charter Family of Companies are in the business of, among other things, providing cable television service,

10

residential and commercial internet service, and telephone service to customers throughout the country, including Missouri.

38.   To market its services, Charter (through its family of companies) employs third party entities to make outbound telemarketing calls on its behalf. Upon information and belief, these companies include, but are not limited to, Empereon Marketing, SatCom Marketing, LLC, MarketLink, Inc., Invenio Marketing, and iPacesetters (collectively these telemarketers shall be referred to as "Charter's Telemarketers").

39.   Charter has contracts (formally titled "Master Outbound Telemarketing Agreements") with each of its telemarketers. The contracts describe which of the Charter's services the third party is to try and sell while engaging in telemarketing calls with consumers.

40.   The products and services Charter's Telemarketers are contracted to market on Charter's behalf include, but are not limited to, digital cable upgrades, premium channels (*e.g.*, HBO), high speed internet, and Charter telephone. These services are available to Missouri consumers, and Charter's Telemarketers place telemarketing calls into Missouri to sell these products and services.

41.   Charter will provide to each of its telemarketers lists of consumers Charter wishes the telemarketer to call in order to sell Charter's goods and services.

11

42.   These "lists" contain identities of both subscriber and nonsubscribers. "Subscribers" are consumers who are current customers of Charter but do not have all of Charter's products. For example, a consumer who subscribes to Charter's cable television services, but not Charter telephone, could be included on the "subscriber" list provided to the third party telemarketers.

43.   "Nonsubscribers" are consumers who are not current customers of Charter. Some are former customers of Charter, and their information was obtained via Charter's billing system. Others were never customers of Charter, whose information was obtained via "compiled list vendors," such as Neustar.

44.   When on the phone with consumers, Charter's Telemarketers will identify themselves as being from Charter.

45.   When making calls on Charter's behalf, Charter's Telemarketers use "predictive dialers" or "autodialers"; devices that allow for numbers to be stored and automatically called.

46.   Consumers have the option of purchasing Charter's services while on the phone with a telemarketer. When that happens, the telemarketer will enter the consumer's information into Charter's billing system, and Charter will set an appointment to make the necessary

12

installation. Charter will then directly bill the consumer for the services provided.

47.     Charter's Telemarketers are compensated by "performance," meaning that they receive a commission based on sales to the consumers on the lists provided by Charter to the telemarketer.

48.     Charter's Telemarketers have made at least thousands of telemarketing calls across Missouri attempting to sell Charter's cable, internet, and/or telephone services.

49.     Many of the Missouri consumers who received calls from Charter are on the Missouri Do-Not-Call List and/or the Federal Do-Not-Call List.

50.     Of the consumers on the Missouri Do-Not-Call and/or Federal Do-Not-Call List who received telemarketing calls from Charter or Charter's Telemarketers, many are not current or former customers of charter, have no business relationship with Charter, and had not given Charter permission to make telemarketing calls to their phone lines.

51.     Charter and Charter's Telemarketers placed at least thousands of telemarketing calls to Missouri consumers, even after the consumers asked that Charter stop calling and had not rescinded that request.  Examples include, but are not limited to:

      a.     Eugene Deslitch of Jackson, Missouri, was a Charter customer until June 2014, when he cancelled his services

with Charter. Later that month, Charter called Mr.
Deslitch to try and sell him services (presumably to regain
his business). Mr. Deslitch asked Charter to stop calling.
Thereafter, from June 2014 to January 2015, Charter
placed 41 telemarketing calls to Mr. Deslitch.

b.    Stacey Williams of St. Louis, Missouri, received a call from
Charter on or about June 11, 2014. Ms. Williams had been
receiving multiple calls a day from Charter, sometimes as
many as 5 in one day. Although Ms. Williams is a customer
of Charter, she asked Charter to stop calling her. The
company's representatives told her that it would take at
least 45 days to be put on the company's no-call list. After
that request, Ms. Williams continued to receive unwanted
and harassing telephone calls.

c.    On April 9, 2014, Charter called Rodney Jenkins of St.
Louis, Missouri, attempting to sell internet, cable, and
phone service. Mr. Jenkins had been receiving multiple
calls from Charter and "was tired of it." Mr. Jenkins told
Charter's representative that he was not interested in the
company's services and asked Charter to stop calling.

14

Despite that request, Charter continued to call Mr. Jenkins.

    d.    James Young of St. Louis, Missouri, is a customer of Charter. However, Mr. Young repeatedly receives telemarketing calls from Charter, and he has asked the company to please stop calling. Despite that request, Mr. Young receives "repeated" calls from Charter.

52.    In many cases, consumers who asked Charter (or its telemarketer) to stop calling were told that it would take forty five (45) days to put the consumer's information on Charter's internal do-not-call list. During that time, Charter erroneously believed that it had the right to continue calling that consumer, despite the consumer's request that Charter stop calling.

53.    Since September 2011, the Missouri Attorney General has received more than 350 complaints from Missouri consumers regarding Charter's telemarketing practices.

## COUNT I-VIOLATIONS OF THE TSR

54.    Plaintiff incorporates all allegations set forth above.

55.    In at least hundreds of instances, in connection with telemarketing, Charter initiated or caused others to initiate outbound

telephone calls to consumers' telephone numbers on the Federal Do-Not-Call registry, in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

56.    In at least hundreds of instances, in connection with telemarketing, Charter initiated or caused others to initiate outbound telephone calls to consumers who had previously stated that they did not wish to receive such calls made by or on behalf of the seller whose goods or services were being offered in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

57.    While Charter has a reasonable period of time to process do-not-call requests, the amount of time and the number of calls placed to consumers after they asked not to be called was not reasonable.

58.    Charter's violations of the TSR were committed with the knowledge required by 15 U.S.C. §45(m)(1)(A).

59.    Consumers have suffered and will continue to suffer substantial injury as a result of Charter's violations of the TSR. Absent injunctive relief by this Court, Charter is likely to continue to injure consumers and harm the public interest.

60.    Plaintiff has provided prior written notice, pursuant to 16 C.F.R. § 310.7(a), to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, prior to the filing of this complaint.

## COUNT II-VIOLATIONS OF THE TCPA

61.     Plaintiff incorporates all allegations set forth above.

62.     Charter, and those calling on behalf of Charter (*see* paragraph 38 above), made or caused to be made, unsolicited commercial telephone calls to Missouri consumers *en masse* without their prior written consent.

63.     Charter, and those calling on behalf of Charter (*see* paragraph 38 above), made, or caused to be made, the phone calls using equipment that had the capacity to store, generate, or produce numbers to be called without manually inputting the consumers' telephone numbers.

64.     On information and belief, Charter, and those calling on behalf of Charter (*see* paragraph 38 above), use an automatic telephone dialing system capable of, *inter alia*, following: (a) generating numbers from calling lists and dialing them without human intervention; (b) storing numbers and dialing those numbers from a database of numbers; (c) storing numbers and dialing those numbers at random; and (d) storing numbers and dialing those numbers sequentially.

65.     Charter's calls constituted calls that were not for emergency purposes as defined in 47 U.S.C. § 227(b)(1)(A)(i).

66.     Many of the consumers who received calls from Charter have never been in an "established business relationship" with Charter as defined

by 47 U.S.C. § 227(a)(2), nor have these consumers ever sought Charter's services at any point in the past.

67. These telephone communications constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

68. The telephone solicitations made by Charter constitute violations of the TCPA.

69. Charter did willfully and knowingly violate the provisions of the TCPA by using an artificial or prerecorded voice to solicit Missouri consumers.

70. Consumers have suffered and will continue to suffer substantial injury as a result of Charter's violations of the TCPA. Absent injunctive relief by this Court, Charter is likely to continue to injure consumers and harm the public interest.

71. Plaintiff has provided prior written notice, pursuant to 47 U.S.C. § 227(g)(3), to the FCC before filing this complaint.

## COUNT III-VIOLATIONS OF THE MISSOURI NO-CALL LAW

72. Plaintiff incorporates all allegations set forth above.

73. Charter has knowingly engaged in a pattern of outbound calls resulting in violations of the Missouri's Do-Not-Call Law, Mo. Rev. Stat. § 407.1090 *et seq.*, by making or causing to be made telephone solicitations to the telephone lines of residential subscribers in the State of Missouri who

18

have given notice to the Missouri Attorney General of the subscribers' objections to receiving telephone solicitations and were placed on Missouri's Telemarketing No-Call List.

## COUNT IV-VIOLATIONS OF THE MISSOURI TELEMARKETING LAW

74.    Plaintiff incorporates all allegations set forth above.

75.    Charter is a "Telemarketer" and/or "Seller" within the meaning of Mo. Rev. Stat. § 407.1070(11)-(12).

76.    Charter has engaged in "Telemarketing" within the meaning of Mo. Rev. Stat. § 407.1070(13).

77.    Charter has, in violation of Mo. Rev. Stat. § 407.1076(4), knowingly and willfully initiated telephone solicitations to consumers even after the consumers communicated to Charter their desire not to receive any future telemarketing calls from Charter, and had not rescinded that request.

78.    Charter has, in violation of Mo. Rev. Stat. § 407.1076(3), caused the telephone to ring or engaged in consumers in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing.

79.    Specifically, Charter has made telemarketing calls to consumers in short periods of time. For example, some consumers have received up to 5

19

telemarketing calls from Charter in one day. Other consumers received 41 calls from Charter in a 7-month period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court enter judgment:

A.     Finding that Charter has violated the provisions the TSR, TCPA, and Mo. Rev. Stat. §§ 407.1076 and 407.1098.

B.     Issuing permanent injunctions pursuant to 47 U.S.C. § 227(b)(3)(A), 15 U.S.C. § 53(b), and Mo. Rev. Stat. § 407.100, to prevent Charter from continuing to violate the TCPA, TSR, the Missouri No-Call Law, and the Missouri Telemarketing Law.

C.     Requiring Charter, pursuant to 15 U.S.C. § 45(m)(1)(A) and 16 C.F.R. § 1.98(d), to pay to the State a civil penalty of up to $16,000 for each violation of the TSR.

D.     Requiring Charter, pursuant to 47 U.S.C. 227(b)(3)(B), to pay the State a minimum of $500 in civil penalties for each violation of the TCPA. Should the Court determine that Charter's conduct was knowing and willful, it may, under 47 U.S.C. §227(b)(3)(C) and 47 U.S.C. § 227(b)(3)(C), treble the amount of civil penalties that Defendant must pay for each violation of the TCPA.

E.     Requiring Charter, pursuant to Mo. Rev. Stat. § 407.1107 to pay to the State a civil penalty up to five thousand dollars ($5,000) for each and

every violation of Mo. Rev. Stat. § 407.1098 that the Court finds to have occurred.

F.      Requiring Charter, pursuant to Mo. Rev. Stat. §§ 407.100.6 and 407.1082 to pay to the State a civil penalty in such amount as allowed by law per violation of Mo. Rev. Stat. § 407.1076 as the Court finds to have occurred.

G.      Requiring Charter to pay all court, investigative, and prosecution costs of this case pursuant to RSMo. § 407.130.

H.      Granting any further relief that is just, equitable, and proper.


Respectfully submitted,

**Chris Koster**
Attorney General


  _/s/ Mary B. Clark_
Mary B. Clark
Eastern District Bar No. 66423MO
Assistant Attorney General
149 Park Central Square
10th Floor
Springfield, MO  65806
(417) 895-6567
FAX (417) 895-6382
Mary.Clark@ago.mo.gov

  _/s/ Mary D. Morris_
Mary Delworth Morris
Eastern District Bar No. 60921MO
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63101

Telephone:  (314) 340-7861
Fax:  (314) 340-7029
Mary.Morris@ago.mo.gov


*Attorneys for Plaintiff*